TOBIAS, J.,
dissents and assigns reasons.
11 Because my view of the record on appeal and the law differs from that of the majority, I respectfully dissent.
Mooring Financial Corporation 401 (k) Profit Sharing Plan (“Mooring”) commenced its suit on 19 March 2008 against Cynthia M. Mitchell (“Mitchell”) (the alleged successor in interest to PM Properties, LLC) and Mortgage Electronics Registration Systems, Inc. (“Mortgage Electronics”) to quiet title to immovable property located at 3031-15 St. Philip Street, New Orleans (“the property”), pursuant to La. R.S. 47:2228, et seq., and La. Const, art. VII, § 25. Mooring had purchased the property at a tax sale in 2002 and obtained a tax sale deed on 31 July 2002 that was duly recorded in the conveyance records of Orleans Parish. The tax sale deed listed the record owner of the property as Mitchell; Mortgage Electronics held a mortgage on the property.
Sei’vice of the suit upon Mitchell was personally made by the St. Tammany Parish sheriffs office on 26 March 2008. Service was made upon Mortgage Electronics in Flint, Michigan, by long-arm service pursuant to La. R.S. 13:3204 |2and La. 13:3205 [1] (certified mail) on 9 April 2008. *322 Neither Mitchell nor Mortgage Electronics filed an answer.
On 6 May 2008, an affidavit attesting to service signed by Lisa Ferrara, a non-attorney-at-law, but notarized by Mooring’s counsel, was filed in the court record. The trial court signed a default on 27 May 2008. A judgment confirming the default was signed on 9 July 2008. Evidence submitted in support of the |sconfirmation of the default consisted of an affidavit of “correctness/prima facie case” and of non-military service signed by the manager of Mooring, a certificate of Mooring’s attorney and an La. C.C.P. art. 1702 B(2) affidavit. No live evidence was presented.
No service of the judgment confirming the default was made upon either Mitchell or Mortgage Electronics. La. C.C.P. art. 1701 B.
On 18 August 2008, more than 37 days following the rendition of the judgment, Mitchell filed a motion for suspensive appeal. The motion was granted that same day and a $5,000.00 bond was posted by Mitchell pursuant to the order of appeal. Although Mitchell’s motion for suspensive appeal was untimely for purposes of a suspensive appeal, La. C.C.P. art. 2123 A, the appeal was timely for a devolutive appeal and the suspensive appeal automatically converted to a devolutive appeal according to our jurisprudence. Franco v. Franco, 04-0967, p. 14 (La.App. 4 Cir. 7/28/04), 881 So.2d 131, 139, citing Touzet v. V.S.M. Seafood Services, Inc., 96-0225, p. 2 (La.App. 4 Cir. 3/27/96), 672 So.2d 1011, 1012 and Lakewind East Apartments v. Poree’, 629 So.2d 422, 424 (La.App. 4th Cir.1993). Appeals are favored in our law. Franco, p. 14, 881 So.2d at 139; Good v. Saia, 07-0145, p. 5 (La.App. 4 Cir. 9/12/07), 967 So.2d 1161, 1165. I therefore find the majority’s discussion of the filing of a petition for nullity of judgment pursuant to La. C.C.P. art. 2001, et seq., misplaced for the appeal as filed was timely.
I find that the entry of the default against Mortgage Electronics was premature. La. R.S. 13:3205 specifically states that the default may not be entered until thirty days after the affidavit of service is filed. The affidavit was filed on 6 May 2008; the first day that a default could be entered against Mortgage Electronics was therefore 5 June 2008. The default of 27 May 2008 was therefore Lpremature by several days. Such makes the default fatally defective and invalidates the subsequent judgment of 9 July 2008. I find nothing in La. R.S. 47:2228 (quoted verba *323 tim infra) that shortens the thirty day period for entry of a default; rather the ten day period for prescriptive titles relates only to the delay for answering suit. The controlling period for entry of the default is contained within the specific statute dealing with the long-arm statute, La. R.S. 13:3205, to-wit, thirty days. (The specific statute dealing with entry of defaults when service is made by long-arm service prevails over the general statute dealing with service when made by a Louisiana sheriff.)
La. C.C.P. arts. 1701, 1702, and 1702.1 provide the methods relating to the entry of a default and the confirmation thereof. They read as follows:
Art. 1701. Judgment by default
A. If a defendant in the principal or incidental demand fails to answer within the time prescribed by law, judgment by default may be entered against him. The judgment may be obtained by oral motion in open court or by written motion mailed to the court, either of which shall be entered in the minutes of the court, but the judgment shall consist merely of an entry in the minutes.
B. When a defendant in an action for divorce under Civil Code Article 103(1), by sworn affidavit, acknowledges receipt of a certified copy of the petition and waives formal citation, service of process, all legal delays, notice of trial, and appearance at trial, a judgment of default may be entered against the defendant the day on which the affidavit is filed. The affidavit of the defendant may be prepared or notarized by any notary public. The judgment may be obtained by oral motion in open court or by written motion mailed to the court, either of which shall be entered in the minutes of the court, but the judgment shall consist merely of an entry in the minutes. Notice of the signing of the final judgment as provided in Article 1913 is not required.
Art. 1702. Confirmation of default judgment
A. A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case. If no answer is filed timely, this confirmation may | abe made after two days, exclusive of holidays, from the entry of the judgment of default. When a judgment of default has been entered against a party that is in default after having made an appearance of record in the case, notice of the date of the entry of the judgment of default must be sent by certified mail by the party obtaining the judgment of default to counsel of record for the party in default, or if there is no counsel of record, to the party in default, at least seven days, exclusive of holidays, before confirmation of the judgment of default.
B. (1) When a demand is based upon a conventional obligation, affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case shall be admissible, self-authenticating, and sufficient proof of such demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering judgment.
(2) When a demand is based upon a delictual obligation, the testimony of the plaintiff with corroborating evidence, which may be by affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case, shall be admissible, self-authenticating, and sufficient proof of such demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering judgment.
*324 (3) When the sum due is on an open account or a promissory note or other negotiable instrument, an affidavit of the correctness thereof shall be prima facie proof. When the demand is based upon a promissory note or other negotiable instrument, no proof of any signature thereon shall be required.
C. In those proceedings in which the sum due is on an open account or a promissory note, other negotiable instrument, or other conventional obligation, or a deficiency judgment derived therefrom, including those proceedings in which one or more mortgages, pledges, or other security for said open account, promissory note, negotiable instrument, conventional obligation, or deficiency judgment derived therefrom is sought to be enforced, maintained, or recognized, or in which the amount sought is that authorized by R.S. 9:2782 for a check dishonored for nonsufficient funds, a hearing in open court shall not be required unless the judge, in his discretion, directs that such a hearing be held. The plaintiff shall submit to the court the proof required by law and the original and not less than one copy of the proposed final judgment. The judge shall, within seventy-two hours of receipt of such submission from the clerk of court, sign the judgment or direct that a hearing be held. The clerk of court shall certify that no answer or other pleading has been filed by the defendant. The minute clerk shall make an entry showing the dates of ^receipt of proof, review of the record, and rendition of the judgment. A certified copy of the signed judgment shall be sent to the plaintiff by the clerk of court.
D. When the demand is based upon a claim for a personal injury, a sworn narrative report of the treating physician or dentist may be offered in lieu of his testimony.
E.Notwithstanding any other provisions of law to the contrary, when the demand is for divorce under Civil Code Article 103(1), whether or not the demand contains a claim for relief incidental or ancillary thereto, a hearing in open court shall not be required unless the judge, in his discretion, directs that a hearing be held. The plaintiff shall submit to the court an affidavit specifically attesting to and testifying as to the truth of all of the factual allegations contained in the petition, and shall submit the original and not less than one copy of the proposed final judgment. If no answer or other pleading has been filed by the defendant, the judge shall, after two days, exclusive of holidays, of entry of a preliminary default, render and sign the judgment or direct that a hearing be held. The minutes shall reflect rendition and signing of the judgment. [Emphasis supplied.]
Art. 1702.1. Confirmation of default judgment without hearing in open court; required information; certifications
A. When the plaintiff seeks to confirm a default judgment as provided in Article 1702(B)(1) and (C), along with any proof required by law, he or his attorney shall include in an itemized form with the motion and judgment a certification that the suit is on an open account, promissory note, or other negotiable instrument, on a conventional obligation, or on a check dishonored for nonsufficient funds, and that the necessary invoices and affidavit, note and affidavit, or check or certified reproduction thereof are attached. If attorney fees are sought under R.S. 9:2781 or 2782, the attorney shall certify that fact and that a copy of the demand letter and if required, the return receipt showing the date received by the debtor are attached and that the number of days required by *325 R.S. 9:2781(A) or 2782(A), respectively, have elapsed before suit was filed.
B. The certification shall indicate the type of service made on the defendant, the date of service, and the date a preliminary default was entered, and shall also include a certification by the clerk that the record was examined by the clerk, including therein the date of the examination and a statement that no answer or other opposition has been filed.
| ^Because Moorings’ claim was a suit to quiet title, the confirmation of the default required live testimony because it did not fall within one of the exceptions in La. C.C.P. art. 1702, where live testimony is not required. Further, although Mooring alleged in its petition that Mitchell acquired the property by an “instrument” dated 20 March 2007 and recorded in the Orleans Parish Conveyance Office, the record is devoid of that “instrument.” Further, the record on appeal is devoid of evidence of Mortgage Electronics’ encumbrance or interest in this litigation.
La. R.S. 47:2228[2] set forth the procedures for quieting title for tax sales. Specifically, La. R.S. 47:2228 states:
After the lapse of three years from the date of recording the tax deed in the conveyance records of the parish where such property is situated, the purchaser, his heirs or assigns, may institute suit by petition and citation as in ordinary actions against the former proprietor or proprietors of the property, in which petition must appear a description of the property, mention of the time and place of the sale and name of officer who made same, reference to page of record book and date of recording tax deed, notice that petitioner is owner of the said property by virtue of said tax sale, and notice that the title will be confirmed unless a proceeding to annul is instituted within six months from date of service of the petition and citation. This suit shall be brought in the parish where the property is situated unless it lies in two or more parishes, in which case this suit may be instituted in either of such parishes. The petition and citation shall be served as in ordinary suits; provided, that if the former proprietor be a nonresident of the state, or unknown, or his residence be unknown, the court shall appoint a curator ad hoc to represent him and receive service, and said curator shall receive for his services a reasonable fee to be fixed by the court in each suit, the same to be taxed as costs of suit. After the lapse of six months from the date of service of petition and citation, if no proceeding to annul the sale has been instituted, judgment shall be rendered quieting and confirming the title.
In all cases where tax titles have been quieted by prescription of five years under the provisions of Section | K25 of Article VII of the Constitution of 1974,[3] the *326 |flpurchaser or his heirs or assigns may, if he or they so desire, either obtain a judgment of the court confirming the title by suit in the manner and form as hereinabove set out, except the delay for answer shall be ten days instead of six months, or the purchaser or his heirs or assigns may, at his or their option, quiet *327 the title by monition proceeding, as provided by law relative to sheriffs sales and tax sales; provided that the failure to bring suit shall in no manner affect such prescriptive titles.
Nothing in this Section shall be construed to affect in any way, the principle that as to a tax debtor-owner in possession, prescription does not begin against him and in favor of the tax title purchaser until such tax debtor-owner has been first dispossessed.
I find nothing in our law that allows Mooring to avoid following the precise procedures set forth in La. C.C.P. art. 1702. In the absence of not presenting live testimonial evidence, essentially tracking the language in the affidavits that Mooring did in fact present, and offering and introducing into evidence a certified copy the tax deed, I find the judgment of 9 July 2008 fatally defective having not been confirmed with competent evidence.
Moreover, it is clear from the debates of the Louisiana Constitutional Convention of 1973 on that which became ultimately became article VII, § 25, and article I, § 4 of the 1974 constitution that the delegates intended to make it difficult to dispossess owners of property; strict adherence to procedural law was effectively mandated. The same rule applied under Article 10, § 11 of the 1921 Louisiana Constitution, a provision adopted during the depression to make it more difficult for creditors to seize the property of struggling debtors.
| mMooring notes in its appellate brief that Mitchell should not have standing to contest the judgment of 9 July 2008. I respectfully disagree. First, one must read the default of 27 May 2008 and the judgment of 9 July 2008 as a whole. The judgment affects both Mitchell and Mortgage Electronics. I do not find either clearly divisible. Second, should Mitchell be dispossessed of her title to the property, she still owes the unpaid portion of the debt to Mortgage Electronics pursuant to the promissory note that she presumably signed with them.
Accordingly, I would reverse the judgment of the trial court quieting Mooring’s title to the property and remand this matter to the trial court for further proceedings.

. La. R.S. 13:3204 reads:
A.In a suit under R.S. 13:3201, a certified copy of the citation or the notice in a divorce under Civil Code Article 102 and of the petition or a certified copy of a contradictory motion, rule to show cause, or other pleading filed by the plaintiff in a summary proceeding under Code of Civil Procedure Article 2592 shall be sent by counsel for the plaintiff, or by the plaintiff if not represented by counsel, to die defendant by registered or certified mail, or actually delivered to the defendant by commercial courier, when the person to be served is located outside of this state or by an individual designated by the court in which the suit is filed, or by one authorized by the law of the place where the service is made to serve the process of any of its courts of general, limited, or small claims jurisdiction.
B. If seivice of process cannot be made on the nonresident by registered or certified mail or by actual delivery, the court shall order that service of process be made on an attorney at law appointed to represent the defendant pursuant to Code of Civil Procedure Article 5091.
C. Service of process so made has the same legal force and validity as personal sendee on the defendant in this state.
D. For purposes of this Section, a “commercial courier" is any foreign or domestic business entity having as its primary pur *322 pose the delivery of letters and parcels of any type, and which:
(1) Acquires a signed receipt from the addressee, or the addressee’s agent, of the letter or parcel upon completion of delivery.
(2) Has no direct or indirect interest in the outcome of the matter to which the letter or parcel concerns.
La. R.S. 13:3205 reads:
No default judgment can be rendered against the defendant and no hearing may be held on a contradictory motion, rule to show cause, or other summary proceeding, except for actions pursuant to R.S. 46:2131 et seq., until thirty days after the filing in the record of the affidavit of the individual who either:
(1) Mailed the process to the defendant, showing that it was enclosed in an envelope properly addressed to the defendant, with sufficient postage affixed, and the date it was deposited in the United Stales mail, to which shall be attached the return receipt of the defendant; or
(2) Utilized tire services of a commercial courier to make delivery of the process to the defendant, showing the name of the commercial courier, the date, and address at which the process was delivered to the defendant, to which shall be attached the commercial courier's confirmation of delivery; or
(3) Actually delivered the process to the defendant, showing the date, place, and manner of delivery. [Emphasis supplied.]

. The method and procedures for quieting title were changed effective 1 January 2009 by La. Acts 2008, No. 819. The prior law applies to the case at bar.

. La. Const, art. VII, § 25 states:
(A) Tax Sales. (1) There shall be no forfeiture of property for nonpayment of taxes. However, at the expiration of the year in which the taxes are due, the collector, without suit, and after giving notice to the delinquent in the manner provided by law, shall advertise for sale the property oil which the taxes are due. The advertisement shall be published in the official journal of the parish or municipality, or, if there is no official journal, as provided by law for sheriffs' sales, in the manner provided for judicial sales. On the day of sale, the collector shall sell the portion of the property which the debtor points out. If the debtor does not point out sufficient property, the collector shall sell immediately the least quantity of *326 property which any bidder will buy for die amount of the taxes, interest, and costs. The sale shall be without appraisement. A tax deed by a tax collector shall be prima facie evidence that a valid sale was made.
(2) If property located in a municipality with a population of more than four hundred fifty thousand persons as of the most recent federal decennial census fails to sell for the minimum required bid in the tax sale, the collector may offer the property for sale at a subsequent sale with no minimum required bid. The proceeds of the sale shall be applied to the taxes, interest, and costs due on the property, and any remaining deficiency shall be eliminated from the tax rolls.
(B) Redemption. (1) The property sold shall be redeemable for three years after the date of recordation of the tax sale, by paying the price given, including costs, five percent penalty thereon, and interest at the rate of one percent per month until redemption.
(2) In the city of New Orleans, when such property sold is residential or commercial property which is abandoned property as defined by > R.S. 33:4720.12(1) or blighted property as defined by Act 155 of the 1984 Regular Session, it shall be redeemable for eighteen months after the date of recordation of the tax sale by payment in accordance with Subparagraph (1) of this Paragraph.
(C) Annulment. No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes prior to the date of the sale, unless the proceeding to annul is instituted within six months after service of notice of sale. A notice of sale shall not be served until the final day for redemption has ended. It must be served within five years after the date of the recordation of the tax deed if no notice is given. The fact that taxes were paid on a part of the property sold prior to the sale thereof, or that a part of the property was not subject to taxation, shall not be cause for annulling the sale of any part thereof on which the taxes for which it was sold were due and unpaid. No judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, and until ten percent per annum interest on the amount of the price and taxes paid from date of respective payments are paid to the purchaser; however, this shall not apply to sales annulled because the taxes were paid prior to the date of sale.
(D) Quieting Tax Title. The manner of notice and form of proceeding to quiet tax titles shall be provided by law.
(E) Movables; Tax Sales. When taxes on movables are delinquent, the tax collector shall seize and sell sufficient movable property of the delinquent taxpayer to pay the tax, whether or not the property seized is the property which was assessed. Sale of the property shall be at public auction, without appraisement, after ten days advertisement, published within ten days after date of seizure. It shall be absolute and without redemption.
If the tax collector can find no corporeal movables of the delinquent to seize, he may levy on incorporeal rights, by notifying the debtor thereof, or he may proceed by summary rule in the courts to compel the delinquent to deliver for sale property in his possession or under his control.
(F) Postponement of Taxes. The legislature may postpone the payment of taxes, but only in cases of overflow, general conflagration, general crop destruction, or other public calamity, and may provide for the levying, assessing, and collecting of such postponed taxes. In such case, the legislature may authorize the borrowing of money by the state on its faith and credit, by bond issue or otherwise, and may levy taxes, or apply taxes already levied and not appropriated, to secure payment thereof, in order to create a fund from which loans may be made through the Interim Emergency Board to the governing authority of the parish where the calamity occurs. The money loaned shall be applied to and shall not exceed the deficiency in revenue of the parish or a political subdivision therein or of which the parish is a part, caused by postponement of taxes. No loan shall be made to a parish governing authority without the approval of the Interim Emergency Board.